# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| LARRY D. SAPP, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action |
| | ) No. 09-4219-CV-S-JCE-SSA |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| Defendant. | ) |

## ORDER

Before the Court are Plaintiff's brief in support of his claim and Defendant's brief in support of the administrative decision. Plaintiff has also filed a Reply Brief in Support of Complaint. The case involves the appeal of the final decision of the Secretary denying plaintiff's application for disability insurance benefits under Title II of the Act, 42 U.S.C. §401 et seq. Pursuant to 42 U.S.C.§ 405(g), this Court may review the final decision of the Secretary. For the reasons stated herein, the decision of the Secretary will be reversed.

Standard of Review

Judicial review of disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision. Robinson v.

Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

When rejecting a claimant's subjective complaints, the ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion

Plaintiff was 39 years old at the time of the hearing before the ALJ. He alleges that he is unable to work because of a ruptured disc in his neck and back from an accident suffered in 2004. He completed the ninth grade and has a GED. His past relevant work includes that of truck driver, welder, mechanic, builder, and factory worker.

At the hearing before the ALJ, plaintiff's attorney summarized his medical history. After an accident involving an 18-wheeler in April of 2004, plaintiff was diagnosed with bulging discs in his neck and low back, and with some minimal bilateral neural paraminal stenosis in his low back. The treating orthopedic surgeon indicated he is not a good candidate for surgery, partially because he still smokes, because of his Medicaid status, and the doctor's opinion that because of diffuse pain, he was not sure surgery was the answer. Dr. Jeffries released plaintiff back to his treating family physician, Dr. Bynum. Dr. Bynum assessed that plaintiff's RFC was less than sedentary because of neck and back problems, as well as migraine headaches.

Plaintiff testified at the hearing that he lives in a mobile home on 40 acres of land, which he bought in 1995. He is able to pay the taxes on this property because of money from a confidential settlement he received after the accident. Because he could not divulge the details of settlement, the ALJ drew a negative inference regarding plaintiff's credibility. Plaintiff testified that he suffers from back pain, which runs down both sides of his spine; it mainly goes into the left leg. He described the pain as feeling like someone is stretching his muscles out, and like there's a wedge right between his hips trying to spread his hips apart. Walking too far, lifting anything heavy, or sitting too long makes it worse. He takes Percocet and Methadone for the pain, as well as Ibuprofen and Advil. He also lies down a lot and tries not to do anything that will aggravate his back. He has numbness in his left leg. Plaintiff testified that he takes

Wellbutrin to help with the smoking, and he has cut down from about two packs a day to four or five cigarettes a day. He has problems sleeping, and has to change positions after about one hour of sleep. Sometimes he can go right back to sleep, and sometimes it takes two hours to get back to sleep. He has a driver's license and drives once or twice a week. His mother helps with driving to the doctor or grocery shopping, as well as with the laundry and house cleaning. He doesn't cook much anymore, and mainly uses the microwave or makes sandwiches. He used to be able to cook a lot. He does no yard or garden work because he is not physically able. He can walk about a block before he starts hurting, his legs get weak, and he might end up with a migraine. He can stand for 10 minutes before his leg and back start hurting. He can lift about 10 to 15 pounds. Plaintiff stated that he can sit about 30 to 45 minutes before he starts having back and leg pain. He gets migraine headaches, including severe pain, nausea, and sound sensitivity two or three times a week. They usually last six to eight hours, but can last up to seven days. He takes Excedrin Migraine medicine, and if that doesn't work, he takes Relpax, and has to lie down in bed. Plaintiff testified that he spent most of the day lying down and watching television. He has to lie down to keep his back from hurting as bad.

The ALJ found that plaintiff had not engaged in substantial gainful activity since April 8, 2004, the alleged onset date. He concluded that plaintiff was not fully credible. It was his finding that plaintiff has severe impairments of "lumbar and cervical degenerative disc disease and strain." [Tr. 40.]. He concluded that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. It was his finding, in reliance on the Medical-Vocational Guidelines, that plaintiff could not perform his past relevant work, but that he had the Residual Functional Capacity ["RFC"] to perform the full range of light work. Therefore, the ALJ found that plaintiff was not under a disability as defined by the Act.

Plaintiff contends that the ALJ erred in failing to afford appropriate and controlling weight to the opinion of the treating physician, Dr. Bynum; erred in his RFC finding; and erred in not properly considering plaintiff's mental disorder. It is also plaintiff's contention that the Appeals Council erred in excluding Dr. Bynum's 2009 explanation of the limitations contained in his 2007 letter.

A review of the medical records in this case indicate that plaintiff suffered a back injury as a result of a vehicular accident in 2004. Early assessment from several physicians was that he should be able to return to work fairly quickly. Dr. Miles thought he would have a permanent partial disability of about 3-4 % of plaintiff as a whole, but did not think he would have a permanent work restriction relative to his cervical spine. When he was seen in 2006, Dr. Miles determined that he had a bulging disc at C5-6, which could explain his neck and shoulder pain. He thought the low back pain was due to a bulging disc in that area. He did not have a good explanation for the left leg complaints, but wanted to pursue that with more testing. Dr. Miles observed that plaintiff remained hyperreflexic at the knees in 2006, and that he was limping significantly on the left side. He discussed a single level anterior cervical discectomy with fusion at C5-6, but felt that plaintiff's smoking habit would impede the potential success of that surgery. Other physicians, including Drs. Noble and Ivins, thought he could perform a range of light work.

Dr. Jeffries saw plaintiff in 2006 for multiple complaints of pain. The doctor reviewed x-rays which showed spondylosis at C5-6 with no instability; MRI scans were also reviewed. Dr. Jeffries diagnosed cervical degenerative disc disease and lumbar degenerative disc disease; he would not recommend surgery because plaintiff's complaints of pain were so diffuse that he did not believe he would respond to surgical intervention, and also because of his smoking. MRIs

performed in 2006 showed more degenerative disc disease and instances of foraminal stenosis secondary to degenerative disease. After reviewing these MRIs, Dr. Jeffries opined that surgery could not be reasonably recommended, and it might make him worse or no better, based on the totality of his symptoms.

Plaintiff was examined by Dr. Ivins for a consultative examination, in which the doctor found that examination findings were consistent with the record as a whole. He found that plaintiff had mild to moderate degenerative disc disease of the spine and narcotics addiction from pain medication. He noted that plaintiff walked with a limp, and used a cane. It was his opinion that plaintiff could perform light work, except that he could not drive or work around dangerous machinery. Dr. Ivins prepared a Medical Source Statement-Physical, in which he noted that plaintiff would not walk without a cane, but the doctor thought it probably was not necessary. He also found that plaintiff had restrictions in both overhead use of his arms to the front and to the side, because of bilateral shoulder problems, and he could only occasionally reach overhead with the right or left hand. It was also his opinion that plaintiff is addicted to Percocet and Methadone; that he should not be operating a motor vehicle; and that he could work around moving mechanical parts of machines if they were not capable of causing injury to extremities, "as judgment and coordination would possibly be impaired by above meds." [Tr. 532].

Dr. Bynum's treatment notes, which were reviewed by the ALJ, indicates that he treated plaintiff from August of 2004 continuing into 2008, at the time of the hearing. The doctor administered an injection of Depo-Medrol for lumbar pain on May 20, 2005. His notes indicate that a repeat MRI in November of 2005 showed degenerative disc disease C5-6 with central left paracentral disk osteophyte and mild asymmetric neuroforaminal narrowing with mild changes at

C6-7.  A lumbar MRI showed a small annular tear and central bulge at L5-6.  The doctor administered a Lidocaine injection in the right sacroiliac joint in November of 2005.  His progress notes for 2007 and 2008 showed refills of Percocet and Methadone.  He noted normal musculoskeletal and neurological examinations.

The ALJ stated that Dr. Bynum's progress notes were significant mainly for repeated refills of pain medication.  He stated that Drs. Cravens, Clark, and Miles did not think that narcotic pain medication was appropriate.   "It appears that the claimant switched to Dr. Bynum because Dr. Cravens and Dr. Miles would not prescribe narcotics for him. Dr. Ivins now notes that the claimant is a narcotics addict." [Tr. 47].  He found Dr. Bynum's assessment of plaintiff's functional limitations to be inconsistent with much of the other medical evidence. He stated that the doctor appeared to "assume" that his "allegations [were] credible." [Id.].

Defendant argues that the treating physician relationship was not as extensive as suggested by plaintiff, because many of the appointments with Dr. Bynum were for prescription refills and the doctor saw his role as being one of managing plaintiff's chronic pain medications.  It is also argued that because the doctor did not appear to perform full physical examinations very often, the ALJ's observation that the statement that the doctor assumed plaintiff was credible was not an erroneous statement. Defendant contends, also, that Dr. Bynum did not have access to all the medical records when he rendered his opinion.

After careful review, the Court finds that there is not substantial evidence in the record as a whole to support the ALJ's decision not to give controlling weight to Dr. Bynum's opinion.  While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record.  Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999);

Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations.

The ALJ basically appeared to dismiss Dr. Bynum's opinion because he did not believe the relationship was truly a treating physician relationship; that plaintiff had sought out Dr. Bynum for narcotics; and that Dr. Bynum merely handed out prescription narcotic medication for plaintiff without examining him or otherwise being cognizant of his condition.

Dr. Bynum, in a letter dated October 2, 2007, stated that he had been plaintiff's attending physician since 2004. He initially saw him because of his worker's compensation injury and pain management. "Since that time he has seen several physicians in consultation regarding his chronic back and neck pain. Currently he remains on medical therapy for his pain management under my direction." [Tr. 23]. Dr. Bynum continues to state that plaintiff has been seen in his clinic on a regular basis. It was his opinion that plaintiff can sit a maximum of two hours at a time, and approximately five hours in an eight-hour day. He opined that it would be in plaintiff's best interest to not sit more than 30 to 60 minutes at any one time. He further stated that plaintiff ambulates with a cane because of his low back pain with radiculopathy and associated neuropathy. Dr. Bynum opined that plaintiff's ability to stand or walk throughout the day is limited, and because his sitting is also limited, he "needs to be in the supine position frequently throughout the day." [Id.]. He also stated his belief that plaintiff suffers from mixed migraine headaches, which occur about two times a week and are aggravated by his chronic neck

pain and associated muscle spasms.  He stated that the migraine headaches were not well controlled and that when he has one, it severely restricts his capacity to work.

After a full review of the record and the ALJ's decision, the Court finds that is was error to not have given controlling weight to the treating physician, and that there is not substantial evidence in the record as a whole to support the ALJ's decision that plaintiff's impairments were not disabling.  The ALJ is this case did not provide good reasons to afford only little weight to Dr. Bynum's opinion.  It is clear that Dr. Bynum had an on-going treating physician relationship with plaintiff at the time he rendered the opinion in 2007.  He had been seeing plaintiff for over three years at that time.  The Court has fully reviewed his treatment notes, which indicate that the doctor, at various times, reviewed plaintiff's medical, social and surgical history during his appointments, discussed medications and issues, reviewed MRI results, administered epidural injections, observed plaintiff walking with a cane, treated conditions such as stress and insomnia, examined him, and discussed his visits with other doctors.  There is nothing in the record to suggest that the opinion of Dr. Bynum is not consistent with his treatment notes and with the record as a whole.  While there are records from some of the doctors whom plaintiff saw during the worker's compensation claim time period that indicate lesser restrictions, these were earlier opinions of his abilities and functional limitations.  It is apparent that the record supports a finding that plaintiff has marked restrictions, which would impede his ability to maintain gainful employment.  The Court finds that the ALJ did not give legally adequate reasons for the decision not to rely on the medically supported assessment of the degree of plaintiff's limitations by his treating physician. Under the Social Security regulations, the opinion of a treating physician is accorded special deference, and the ALJ may only discount or disregard that opinion where there is better or more thorough medical evidence, or where a treating physician's opinion is so

inconsistent that it undermines the credibility of such opinions. After reviewing the record as a whole, the Court finds that there was not substantial evidence to conclude that the opinion of Dr. Bynum was inconsistent with plaintiff's treatment records, or inconsistent with the testimony adduced at the hearing.

Additionally, the Court finds that plaintiff is correct in his contention that the Appeals Council erred in not considering Dr. Bynum's sworn statement that was submitted after the hearing. Defendant asserts that it is not clear if the Council considered Dr. Bynum's statement, but if it did, it clearly disregarded it, and if it did not, it does not matter because his statement was merely cumulative. The Court has fully reviewed the remarks by the Appeals Council, as well as Dr. Bynum's sworn testimony. The Appeals Council indicated that it reviewed some later records in 2009 from Dr. Bynum, and his sworn statement, dated July 7, 2009. It stated that the ALJ made his decision through February 3, 2009, and this was therefore new information about a later time.

Having carefully reviewed Dr. Bynum's sworn statement, the Court finds that it cannot be said that this statement was not relevant to the time period in question. Dr. Bynum's statement was intended to dispel some of the ALJ's concerns regarding the narcotic pain medication, the doctor's role in plaintiff's treatment regimen, and the basis for his opinions, during the relevant time period. Upon careful review, the Court is satisfied that the information was not cumulative, and was not properly considered by the Appeals Council. Specifically, in the 2009 statement, Dr. Bynum addressed the issue of why he recommended, in his 2007 letter, that plaintiff lie down during the workday, which conclusion was based on his almost monthly observations of plaintiff over a period of about three years. He also discussed the strength of plaintiff's medications; and he discussed the relationship between plaintiff's chronic pain and his

headaches. He testified that his treatment of plaintiff had started during his worker's compensation claim, originally to address his complaints of low back and neck pain and headaches. Other doctors were also assessing him at that time. He also saw him for pain management and has seen him on a near monthly basis since then. He advised that plaintiff was originally prescribed Methadone, Percocet for breakthrough pain, and Soma for muscle spasms. He started with a fairly low dose of Methadone, which was increased within a few months; he has been maintained at a stable dose at a mild to moderate level since that time. He has been prescribed maximum strength Percocet, as needed for breakthrough pain. The medicine can be given up to two tablets four times a day, or higher, but plaintiff has been taking approximately one tablet four times a day as needed. Dr. Bynum stated that the same is true for the Soma, which he has been taking on a regular basis for muscle spasms. The doctor opined that if someone is treated for chronic pain and takes appropriate doses, "they should become functional." [Tr. 13]. It was his opinion that plaintiff "has presented himself as maintaining some level of function on a more often than not [sic] basis." [Id.]. The doctor stated that if someone were taking an excessive amount there might be problems with cognition, coordination, speech, or allergic side effects. Dr. Bynum testified that Methadone is believed to be, by pain experts, one of the best medicines for chronic low back pain because it is not commonly abused, is long-acting, and is only taken once or twice daily. "I feel comfortable in prescribing that medicine. I have used it in other patients and I believe it's less likely to be abused. I also note that [plaintiff] has been on a stable chronic dose for approximately four years." [Tr. 19]. Dr. Bynum also stated that his opinion that plaintiff could not sit longer than 30 to 60 minutes at a time was based on his almost monthly observations of him since 2004. He is currently still seeing plaintiff every other month or so. The doctor stated that plaintiff suffers from chronic

pain, associated with muscle spasms through his lumbar and lower thoracic spine; that a sitting position increases the spasms and discomfort; and that this is not unusual with a back injury similar to plaintiff's.  It was his statement that because he saw plaintiff so frequently, he only did a full neurological exam of his lower extremities quarterly to semiannually.  Regarding plaintiff's walking with a cane, he stated he believed this was because of muscle spasms, and that plaintiff used a cane intermittently as a supportive tool.  Regarding the limitations he suggested regarding sitting, standing and walking, as well as the need to lie down, the doctor stated that his was based on his questioning plaintiff and on five years of observing him in the exam room and walking down the hall.  The doctor explained how a supine position takes some of the load bearing off the lumbar spine.  He testified regarding his diagnosis of mixed migraine headaches as being aggravated by chronic neck pain and muscle spasms.  He believed these had lessened in frequency, but the headaches could cause an increase in taking pain medication and could require the need to be in dark, quiet place.

After careful review, the Court finds that this evidence was not merely cumulative, but rather, addressed the concerns expressed by the ALJ regarding the level of plaintiff's disability during the relevant time period, and was not properly considered by the Appeals Council.  When the Appeals Council has considered new and material evidence and declined review, the Court must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence.  <u>Kitts v. Apfel</u>, 204 F.2d 785, 786 (8th Cir. 2000).  Such evidence may be considered by the reviewing court in determining if there is substantial evidence to support the ALJ's decision.

The Court finds that, based on the record as a whole, including new evidence submitted to the Appeals Council, the ALJ's decision to disregard the opinion of the treating physician is

not supported by substantial evidence. The ALJ's finding that plaintiff was not disabled by severe physical impairments is not adequately supported by the record as a whole. Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 3/22/11